UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

TRENTON DAVON FYE,

    Plaintiff,

    v.      CAUSE NO. 3:25-CV-589-CCB-SJF

JOHN DOE #1, et al.,

    Defendants.

## OPINION AND ORDER

Trenton Davon Fye, a prisoner without a lawyer, was ordered to show cause why the initial partial filing fee was not paid. (ECF 4.) Upon review of his response (ECF 5), the case will proceed to screening. He is reminded that he remains obligated to pay the full amount of the fee over time in accordance with 28 U.S.C. § 1915.

The court must screen the complaint (ECF 1) and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because Fye is proceeding without counsel, the court must give his allegations liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Fye is an inmate in the Westville Control Unit (WCU), a long-term segregation unit. In January 2024, when he was housed at Miami Correctional Facility (MCF), he was "involved in an assault of a correctional officer" in which the officer was stabbed. Fye was "apprehended" by correctional staff immediately after the assault, stripped of his clothing, and placed a in bare cell. He was subsequently taken to the shower, and after he showered he was given a t-shirt and boxer shorts to put on and was taken back to the cell.

Later that day he was taken to an interrogation room. Four unidentified male correctional officers wearing tactical gear entered the room.[1] He refers to them as "John Doe #1-4." He claims the officers were acting "extremely aggressive" and "screamed" at him to remove all his clothing, which he did. One of the officers told him to show the officers his genitals, at which point the officers laughed and made "humiliating comments" about his genitals for approximately a minute. One of the officers then ordered him to turn toward the wall and bend over. When he hesitated the officer threatened to "beat the shit" out of him. He then complied and remained in that position for a minute or two, while the officers made "comments and sounds of disgust" about the way his body looked. They also called him names like "faggot ass homosexual." He claims he tried to file a grievance about this incident but his grievance allegedly went missing.

---

[1] He claims a fifth, female officer was present but remained outside the interrogation room, and he has chosen not to name her as a defendant. (ECF 1 at 6.)

2

In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the deprivation is serious enough that it amounts to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). On the subjective prong, the prisoner must allege the defendant acted with deliberate indifference to his health or safety. *Farmer,* 511 U.S. at 834. "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (citation omitted).

Strip searches are generally permissible in the prison context if conducted for a legitimate penological reason. *See Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 330 (2012); *see also Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) ("There is no question that strip searches may be unpleasant, humiliating, and embarrassing to prisoners, but not every psychological discomfort a prisoner endures amounts to a constitutional violation."). However, a strip search will violate the Eighth Amendment if it is "totally without penological justification" or "conducted in a harassing manner intended to humiliate and inflict psychological pain." *Calhoun*, 319 F.3d at 939.

Fye has alleged a plausible claim under these standards. A strip search might have been justified in light of Fye's admitted involvement in the assault of a correctional officer. However, Fye claims the officers made humiliating comments about his body

3

and unduly prolonged the search beyond what was necessary to determine if he had weapons or contraband to cause him emotional distress. He will be permitted to proceed against John Does #1-4 on an Eighth Amendment claim.

He also sues MCF Warden Brian English, but there is no indication this high-ranking official had any personal involvement in these events or knew that Fye was subjected to an unduly harassing strip search and condoned or approved of the officers' behavior. The Warden cannot be held personally liable solely because of his position. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018); *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

It appears Fye may have named the Warden as a defendant for the purpose of identifying the John Doe defendants. It is permissible to sue a "placeholder defendant" in federal court, but as a practical matter unnamed defendants cannot be served with process. *See Rodriguez v. McCloughen*, 49 F.4th 1120, 1121 (7th Cir. 2022). The John Doe defendants must be identified and served within the two-year statute of limitations period and the deadline specified in Federal Rule of Civil Procedure 4(m). *Id.* The court has an obligation to assist Fye in trying to identify and serve these defendants, and the two-year deadline is rapidly approaching in this case. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990). Therefore, the court will keep the Warden in the case as a defendant to identify the officers. The court will order him to provide the names of these individuals, to the extent he is able, as outlined below.

Fye also purports to assert claims against the officers under the First and Fourteenth Amendments. Constitutional claims must be analyzed under the most "explicit textual source of constitutional protection." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Fye's allegations about being subjected to a humiliating strip search are most appropriately analyzed under the Eighth Amendment. Additionally, he can have "but one recovery" against the officers, *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 672 (7th Cir. 2012), and his case "gains nothing by attracting additional constitutional labels" with minimal applicability. *Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

For completeness, the court notes that his allegations do not give rise to a plausible claim under these Amendments. His allegation that the officers harassed him because they were angry he assaulted a fellow officer does not support a plausible First Amendment retaliation claim, because assaulting an officer is not protected First Amendment activity. *See Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). The court also cannot plausibly infer that the officers substantially burdened his religious practice simply by falsely accusing him of being "homosexual" during this brief incident.[2] *See Kaufman v. Pugh*, 733 F.3d 692, 696 (7th Cir. 2013). To the extent he is asserting interference with the grievance process, this might provide justification for his failure to exhaust if that becomes an issue at a later stage, *Woodford v. Ngo*, 548 U.S. 81 (2006), but it does not give rise to an independent Due Process or First Amendment claim. *Daniel v.*

---

[2] There is also no basis to plausibly infer that he is being subjected to ongoing interference with his religious practice that would support a claim under the Religious Land Use and Institutionalized Persons Act. *See Sossamon v. Texas*, 563 U.S. 277, 285 (2011); *Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012).

5

*Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016); *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011).

Nor has he alleged a plausible "class-of one" Equal Protection claim. *See Word v. City of Chicago*, 946 F.3d 391, 395–96 (7th Cir. 2020). "[E]ven at the pleading stage," a plaintiff asserting such a claim "must anticipate the burden of eliminating any reasonably conceivable state of facts that could provide a rational basis for the government's actions." *Walker v. Samuels*, 543 F. App'x 610, 611 (7th Cir. 2013). Class-of-one claims cannot be used to challenge discretionary decisions that are "based on a vast array of subjective, individualized assessments." *Engquist v. Oregon Dept. of Agriculture*, 553 U.S. 591, 603 (2008). In the prison context, "choosing when and how to apply discipline are discretionary decisions falling under *Engquist*." *Atkinson v. Mackinnon*, No. 14-CV-736-BBC, 2015 WL 506193, at *1 (W.D. Wis. Feb. 6, 2015). It is evident from Fye's own allegations that he was singled out for a strip search because he was involved in the serious assault of a correctional officer. The officers were not permitted to conduct the search in an unduly harassing manner, but the court considered Fye's allegations about their harassing conduct in permitting him to proceed on an Eighth Amendment claim. He will not be permitted to proceed on these additional claims.

As a final note, Fye requests injunctive relief requiring the four John Doe officers to stay "separated" from him while this case is pending. (ECF 1 at 7.) However, he has not alleged any ongoing problems with these officers, and the incident he describes occurred nearly two years ago. Additionally, he is no longer at MCF, where these officers are employed, and he does not allege he is likely to return to MCF anytime in

6

the near future. Under these circumstances, the court declines to take further action on his request for injunctive relief. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (claim for injunctive relief related to conditions at prison become moot if prisoner is no longer incarcerated there, unless he can demonstrate he is likely to be reincarcerated at that facility in the near future).

For these reasons, the court:

(1) **GRANTS** the plaintiff leave to proceed against John Does #1-4 in their personal capacity for monetary damages for subjecting him to an unduly harassing strip search on or about January 11, 2024, in violation of the Eighth Amendment;

(2) **GRANTS** the plaintiff leave to proceed against Warden Brian English for the sole purpose of identifying John Does #1-4;

(3) **DISMISSES** all other claims;

(4) **DIRECTS** the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Brian English at Miami Correctional Facility and to send him a copy of this order and the complaint pursuant to 28 U.S.C. § 1915(d);

(5) **ORDERS** the Indiana Department of Correction to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available;

(6) **WAIVES** the Warden's obligation to answer the complaint and **ORDERS** the Warden to provide on or before **December 15, 2025,** the name of the four male correctional officers dressed in tactical gear who conducted a strip search of the plaintiff

7

in an interrogation room at Miami Correctional Facility following his assault on a correctional officer on or about January 11, 2024 (described as a black male approximately 5 foot 7 with a "foreign accent" and three white males), or to file a notice by that date explaining why the names of these individuals cannot be provided.

SO ORDERED on November 13, 2025.

                                                /s/*Cristal C. Brisco*
                                                CRISTAL C. BRISCO, JUDGE
                                                UNITED STATES DISTRICT COURT